UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JESSE JAMES,

                       Plaintiff,

                                                                       **MEMORANDUM** & **ORDER**

      -against-

                                                                        06 CV 680 (RJD) (LB)

ENTERPRISE ASSOCIATION OF STEAMFITTERS
LOCAL 638 OF THE UNITED ASSOCIATION OF
STEAM, HOT WATER, HYDRAULIC AND
GENERAL PIPE FITTERS OF NEW YORK AND
VICINITY,

                       Defendant.
------------------------------------------------------------------X

DEARIE, Chief Judge.

      Before the Court is defendant's motion for summary judgment.

      The Court has already construed plaintiff's protean array of allegations as liberally as the law allows in the face of considerable questions of timeliness and exhaustion, but concludes now that no amount of judicial empathy can substitute for the evidence that is simply lacking in this case.[1]

---

[1] At the 12(b)(6) stage, this Court drew a slightly more forgiving timeline than the one that Magistrate Bloom settled upon in her Report & Recommendation and concluded, notwithstanding Magistrate Bloom's recommendation, that plaintiff's *state* and *city* law allegations of discrimination and retaliation based upon events occurring *after December 1, 2003*, should survive, and granted plaintiff leave to amend his complaint to include any additional allegations falling into that category. Consistent with the R&R, the Court dismissed all of plaintiff's *federal* discrimination claims but allowed his *federal retaliation* claims based on events occurring *after February 5, 2005* to survive. See Docket 41, 44. Most of the underlying facts, including plaintiff's lengthy administrative journey to this Court, are recounted in the R&R and not restated here. The six distinct fragments of plaintiff's initial claims that survived dismissal take the form of the four "Counts" of his most recent pleading. See *Third Amended Complaint*, Docket 46.

1

I.

The principles governing motions for summary judgment are so well-established that it is only for the sake of the litigant on the losing side—here, plaintiff Jesse James—that they warrant recitation. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2). As the Supreme Court made unmistakably clear in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), which entirely controls here, the parties' burdens under Rule 56 are crucial and dispositive:

> In our view, the plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

<u>Celotex</u>, 477 U.S. at 322-23 (quoting Fed. R. Civ. P. 56) (emphasis added).

The Court in <u>Celotex</u> squarely rejected the notion that a party seeking summary judgment must "support" its motion "with affidavits or other similar materials *negating* the opponent's claim," <u>id.</u> at 322 (emphasis in original), having reversed the United States Court of Appeals for

the District of Columbia on precisely that ground, id., and held, instead, that the moving party's "burden" may be discharged by "the initial responsibility of informing the district court of the basis for its motion" and "identifying" the portions of the record that it believes demonstrate the fatality in plaintiff's proof. Id.  Accord Gianullo v. City of New York, 322 F.3d 139, 141 n.2 (2d Cir. 2003) ("under the doctrine of [Celotex], a defendant may move for summary judgment on the ground that the plaintiff has failed to adduce any evidence of an element of plaintiff's claim, and if the plaintiff fails in response to contest this assertion or adduce such evidence, defendant, without more, will prevail"); Parker v. Sony Pictures Etm't Inc., 260 F.3d 100, 111 (2d Cir. 2001) (defendant "need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial [but] need only point to an absence of proof on plaintiff's part").

The Second Circuit has not diluted the Celotex doctrine.  See Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219 (2d Cir. 1994).  Indeed, even while apparently admonishing the district courts in this Circuit for granting summary judgment too often, the Court of Appeals in Gallo nevertheless recognizes that, under Celotex, a defendant is entitled to summary judgment "by showing that *little or* no evidence may be found in support of the nonmoving party's case."  Gallo, 22 F.3d at 1224 (emphasis added).[2]

"One of the principal purposes of the summary judgment rule," according to the Supreme

---

[2] The recitation of summary judgment standards in Gallo begins with the following: "Considering how often we must reverse a grant of summary judgment, the rules for when this provisional remedy may be used apparently need to be repeated." 22 F.3d at 1224.  Gallo also urges district courts to be "cautious" about granting summary judgment in employment discrimination cases because of the usual absence of smoking gun documents or comparable direct evidence of the discriminatory intent on which most cases turn.  The focus of Gallo, however, was on a plaintiff's effort to show that the employer's explanation for the challenged adverse employment action was pretextual – what we typically call stage three under the familiar McDonnell-Douglas rubric. Here, by contrast, as the forthcoming discussion demonstrates, the fatality of proof occurs at the prima facie stage.

Court, "is to isolate and dispose of factually unsupported claims or defenses." Celotex, 477 U.S. at 324. As the last checkpoint before trial, Rule 56 therefore demands that, to continue on, a plaintiff "designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). Thus, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is *so slight*, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo, 22 F.3d at 1224 (emphasis added).

For all its rigor, however, summary judgment is not ruthless: before the Court can reach the conclusion, *sans* trial, that a party's case is simply unwinnable, it must construe the record before it in the light most favorable to that litigant, draw all reasonable inferences in his favor, and resolve any ambiguities his way. Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (internal citation omitted). In the words of Gallo, "the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. Even such a pro-plaintiff framework, however, has its limits, for if all that results is "some metaphysical doubt as to the material facts," then the rules say that plaintiff loses. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## II.

### A.     Plaintiff's Deposition

Defendant, in discharge of its "initial responsibility of informing the district court of the basis for its motion" by "identifying" what it believes to be the dispositive portions of the record,"

4

Celotex, 477 U.S. at 322, focuses on two documents. The first is the transcript of plaintiff's deposition, conducted at Riker's Island on October 19, 2009.[3]

Critical excerpts include the following:

Q. Now, you claimed that . . . do you know Dan Moran and Bill Hopkins?[4]
A. No.
Q. You don't know who they are?
A. No.    (Tr. at p. 11)

With respect to the basic claims of discrimination, plaintiff testified:

Q. While working at 338 Broadway, did you encounter any discrimination?
A. No.
Q. While working at 338 Broadway, did you encounter any harassment?
A. No
Q. While working at the Manhattan Mall, did you encounter any discrimination?
A. I don't recall.
Q. And while working at the Manhattan Mall, did you encounter any harassment?
A. I don't recall.   (Tr. at pp. 11-12).

And again, during the same deposition:

Q. I am asking you, who do you claim from Steamfitters' Local 638 discriminated against you?
A. I don't recall.   (Tr. at p. 68).

With respect to his retaliation claims, plaintiff testified:

Q. Who in Local 638, if anyone, do you claim retaliated against you?
A. I don't recall.
Q. And by discrimination and retaliation, I am talking about on any basis. Those answers apply in terms of–
A. What answers?

---

[3] It is undisputed that, since in or about January 2009, plaintiff has been imprisoned. Compare Defendant's Statement Pursuant to Local Civil Rule 56.1 of Material Facts Not in Issue ("DEF 56.1") at pars. 49-52 with Plaintiff's Counter-Statement of Material Facts Pursuant to Local Rule 56.1 ("PLF 56.1) at pars. 49-52. Plainitff was deposed while incarcerated pursuant to Fed. R. Civ. P. 30(a)(2)(B) and as authorized by Magistrate Bloom. See Docket 63.

[4] Shop stewards Daniel Moran and Billy Hopkins are named throughout the pleadings as the principal perpetrators of the alleged homophobic taunting of plaintiff.

5

| | | |
|---|---|---|
| Q. | That you don't recall who in Local 638 discriminated against you? | |
| A. | That's correct. | |
| Q. | And I am saying discriminated against you because of disability and discriminated against you because of sexual orientation. My question applies to both. Is your answer the same for both–? | |
| A. | Correct. | |
| Q. | –in terms of discrimination and retaliation? | |
| A. | Yes sir. | |
| Q. | Now, do you claim that anyone from Local 638 threatened you with physical harm? | |
| A. | I don't recall. | |

**B.     Counsel's Ensuing Motion to Withdraw and
        Plaintiff's Effort to "Correct" His Testimony**

Two weeks after the deposition, by letter dated November 3, 2009, plaintiff's counsel Michael Borrelli moved before Magistrate Bloom to withdraw as counsel, citing plaintiff's deposition testimony as grounds. See Docket 67.[5] In the motion to withdraw, Mr. Borrelli explained that "as a result" of plaintiff's deposition testimony, which included "several admissions undermining his claims," Mr. Borrelli felt his firm had "not only no choice, but an affirmative obligation" to seek to be relieved. Id. In a more detailed letter to Magistrate Bloom submitted *ex parte*, Mr. Borrelli asserted that his client had "admitted to the fact that he either doesn't remember or cannot state under oath that he was discriminated or retaliated against" and that Mr. Borrelli therefore believed that both the New York Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure obligated his firm to discontinue prosecuting "what appears now to be a frivolous matter." See Docket 70.

In response to his attorney's motion, plaintiff submitted a set of three letters, all dated November 12, 2009. See Docket 69. The first, addressed to Mr. Borrelli, states:

---

[5]Although plaintiff had commenced this matter pro se, within a matter of months the Borrelli firm was retained, and has been counsel of record for more than four years.

> If there is anything I can do to keep you as my attorney then please come in and speak with me . . . I loved having you as my attorney and would hate to lose you so close to the end. . . . I'm writing two additional letters for you. . . . one to grant you permission to withdraw if you don't want to represent me any longer then I don't want you to force you to stay.  The second [,] telling the court my situation for that day.  You can hand both letters in, just one, or none the choice and option is up to you. . . I look forward to [illegible] this case with you.  Hopefully at trial together.  But if not I loved having you as my attorney and wish you all the best in the future.

Id. at 6.

The second of the three, the letter "telling the court [his] situation," is addressed to Magistrate Bloom:

> After reviewing the transcript there is clearly a numerous amount of errors. I would like additional time granted so me and my attorney can review the transcript together and correct those mistakes accurately.  If my attorney is granted permission to withdraw from this case before that can be accomplished, this case should ultimately be dismissed because I will not be able to afford to hire another attorney and it will do no good to me to be without an attorney.

Id. at 1.  By way of explaining his seemingly inexplicable lack of memory, plaintiff wrote:

> On 10/19/09 I gave a deposition. I did not know from my attorney that I was going to be giv[ing] a deposition that day or any day prior . . . I found out I was going to give a deposition one minute before I gave it.  Since being incarcerated I have not slept, I did not sleep that night either. I was exhausted. I was not given my medication nor have I been given my medication on a steady basis before or after this.  My left ear was infected and clogged that day. I could not hear out of it and found out it was infected three days after this. Because of this my attorney should not be granted his withdraw[a]l.

Id.[6]

---

[6] The Court observes that plaintiff did not complain about medication, lack of sleep, or the condition of his ear during the deposition; their first mention came in this letter in opposition to his attorney's motion.  He was asked, at the start of the deposition, whether he understood what a

The same letter contains plaintiff's efforts to "correct" the deposition transcript; reproduced here verbatim, plaintiff's letter states:

> Here is a list of some of the mistake[] that my attorney listed.
>
> Page 11, line 10-page 12, line 12
> Q: Do you know Moran and Hopkins?
> A: No
>
> *Correction*: No, not on a personal level, but I did work with them.
>
> Q: Do you know who they are?
> A: No.
>
> *Correction:* Do I know who they are, yes, am I friends with them no.
>
> Q: Manhattan mall, difficulties on the job.
> A: I don't recall → accurate
> Q: While at 338 Broadway . . .
> A: No. → I worded at 388 West Broadway
> Q: While at 338 Broadway . . .
> A: No. → I worked at 388 West Broadway
> Q: Manhattan Mall
> A: I don't recall → accurate
> Q: Alpha Mechanical
> A: I don't recall → I worked for the for days which ended on 4/1/04.

The foregoing are the entirety of plaintiff's corrections. Whatever else might be said of them, they certainly do not give rise to genuinely disputed material facts or suggest that a re-opening of the deposition, a question not formally before the Court but begging to be asked, would be anything but a futile and wasteful exercise.

Turning to the third of plaintiff's three letters, the one permitting Mr. Borelli to withdraw,

---

deposition was and he said he did. He was also asked whether he was taking any medications that would interfere with his ability to answer questions and he said no. Tr. at 2-7.

plaintiff addressed himself to "Whom It May Concern" as follows:

> I Jesse James am granting the law office of Borrelli & Associates . . . permission to withdraw from this case. Under the New York rule of professional conduct rule 1.16(10), that permission must be granted.

Id. at 5.

Magistrate Bloom, by order dated November 23, 2009, denied Mr. Borrelli's motion to withdraw. See Docket 70. Magistrate Bloom noted, *inter alia*, Mr. Borrelli's "admi[ssion] that upon retention, he was 'aware of the difficulties involved with this representation' but 'eagerly agreed to meet those challenges for a client whom [he] believed was wronged.'" Id. at 3 (quoting Docket 67). Magistrate Bloom also recognized that plaintiff's deposition testimony "undermines his case" and that it "may make his case unwinnable," but rejected the notion that plaintiff's "poor performance at his deposition" *ipso facto* converted what Mr. Borrelli once believed to be a claim with merit into one that was "frivolous," remarking that counsel had had "ample time over the course of his representation to investigate the claims and to evaluate the strength" of his client's case, and that whatever their contours and viability, "plaintiff's claims are the same now as when counsel first filed [his] notice of appearance." Id.

C. **Plaintiff's Submissions in Opposition to the Motion for Summary Judgment**

Mr. Borrelli commendably submitted a hefty set of opposition papers on his client's behalf. See Docket 76-80. Upon careful inspection of this submission, however, the Court readily discerns that Mr. Borrelli no doubt felt obliged to file *something* on behalf the client he was required to continue representing, but likewise recognized his obligation, in doing so, not to

9

misrepresent the state of the record. Accordingly, the Court has received what no doubt amounts to the entirety of counsel's case file, for the "opposition papers" consist, for the most part, of perfunctory re-submissions of plaintiff's various administrative filings, the pleadings in this case, and docketed rulings by Magistrate Bloom and this Court.

Beyond these items, only two occasion comment. The first is a document captioned "Counter-Statement" pursuant to local rule 56.1. For a plaintiff facing a summary judgment motion, and a court asked to decide it, this should be the "aha!" document where, as the local rule requires, the plaintiff seeking a trial should set forth, plainly, the material, trial-worthy facts, and the corresponding evidence of those facts. See Local Civil Rule 56.1 (d). Plaintiff's 56.1 statement however, is a nullity. The document resorts, almost exclusively, to the pleading-like device of asserting that "[p]laintiff is unable to dispute or admit the fact set forth in this paragraph of Defendant's 56.1 because the Defendant is not in compliance with Local Rule 56.1(d) in that the citation in this paragraph of Defendant's 56.1 is to evidence which is not admissible."[7] Where it does engages the record in any meaningful way, plaintiff's 56.1 merely lodges plaintiff's intent to dispute a fact that defendant characterizes as undisputed but does not offer any evidentiary basis whatsoever for the asserted dispute. Under the law that is, quite simply, not a "genuine" dispute.

The other document of note is labeled "Declaration of Jesse James" and bears plaintiff's signature. By any measure, however, the document is a pleading. And of course to readers, like

---

[7] Not only are these pleading-like averments out of place in a 56.1 statement, they are also incorrect. Plaintiff tenders this "unable to dispute or admit" refrain in paragraphs 1-7, 12, 20, 21, 24, 29-42, 44, 49-51 and 53-58. Of these, only four paragraphs flag apparent failures by defendant to cite to the record (pars. 21, 42, 51 and 58), but each of these paragraphs refers to obviously judicially noticeable matters of the docket. Five of plaintiff's "unable to dispute" assertions arguably have some basis because they relate to defendant's citation to plaintiff's various administrative filings, but plaintiff's opposition papers rely on the same materials. Each of the remaining uses of the "unable to dispute" device is inexplicable.

this Court, familiar with the sequence of plaintiff's complaints, the echo is unmistakable.

Paragraph 52 of plaintiff's 56.1 statement confirms that the "declaration" is tantamount to a pleading:

> Since in or about January 2009, Plaintiff has been imprisoned. He has been transferred on several occasions, and maintaining a line of communication with him has been difficult. Prior to the deposition of Mr. James on October 19, 2009, Counsel was unable to communicate at length with Plaintiff to prepare him for his deposition. Whether or not this would have altered his testimony is unclear, but Plaintiff did deny, or fail to recall many of facts of the discrimination and retaliation charges that he has brought against the Union. Mr. James since wrote to the Court asking that he be permitted to amend the answers that he gave during his deposition, and stated that a combination of exhaustion, poor medication regimen, illness, and ignorance to the deposition led him to reply inappropriately to Defendant's Counsel. Ex. Z. Plaintiff's Counsel did send Plaintiff his deposition transcript under a letter that instructed him to amend to his responses. Mr. James failed to respond to this request. In light of Counsel's uncertainty as to the validity of any of the responses supplied by Mr. James during his deposition, it has instead relied on an affidavit that has been prepared on Mr. James' behalf based on the allegations he made in his Complaints, and signed by Mr. James through the help of Mr. Bob Lanza, Unit Manager, Devins Federal Medical Corrections Facility in Ayers, Massachusetts.

While the Court is inclined to say bravo to Mr. Borrelli for his zealous discharge of his obligation to oppose the motion on his client's behalf, alchemy is not his trade, nor this Court's, and nothing short of that kind of magic can transmute an allegation into evidence. The law is crystal clear: a party cannot avoid summary judgment by contradicting his own deposition testimony in a subsequent affidavit. E.g., Cordell v. Verizon Communications, Inc., 331 Fed. Appx. 56, 58 (2d Cir. 2009) (assertions in affidavit that contradict earlier deposition testimony "do not qualify as evidence of discrimination" at *prima facie* stage); Reynolds v. Sealift, Inc., 311 Fed.

11

Appx. 422, 425 (2d Cir. 2009) ("'[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony") (*quoting* Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir.1996)); Beckerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999) ("[i]t is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous [d]eposition testimony") (internal quotation marks and citation omitted), cert. denied, 530 U.S. 1242 (2000). Having scoured the Circuit's jurisprudence on the question, the Court find no basis whatsoever for rewriting or creating an exception to this principle. The Memorandum of Law that Mr. Borrelli submitted on plaintiff's behalf essentially concedes the point. It is premised entirely on the proposition that the charitably labeled "declaration" is evidence but furnishes no authority for that misapprehension. Excising the references to the declaration leaves only a quite thorough recitation of the law of discrimination. Although the brief also thoroughly *describes what plaintiff's claims are*, it does not show the Court how plaintiff could possibly prove them.

In sum, even applied with the utmost empathy for the personal hardships that appear to have befallen plaintiff Jesse James, the foregoing standards require the Court to grant defendant the relief it seeks and enter judgment in its favor on each of plaintiff's outstanding claims. Under Celotex, there has been "adequate time for discovery," 477 U.S. at 322—indeed, the case is entering its sixth year on the docket, and the latitude extended by Magistrate Bloom in accommodating plaintiff, chronicled on that docket, speaks for itself—and defendant has "inform[ed] the [ ] Court of the basis for its motion," 477 U.S. at 322-23, namely, that plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his]

12

case." Id. There is no mincing of words by defendant, nor should there be by this Court: the record here shows this to be essentially a "complete failure of proof" case under Celotex. See id., 477 U.S. at 322 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). As the recited authorities make clear, there need be no quibble about whether the "failure of proof" is an absolute zero or whether, instead, plaintiff's ceaseless repetition of his allegations might have left some imprint in the hunch department; the result is the same. See Matsushita, 475 U.S. at 586 (defendant wins despite "some metaphysical doubt as to the material facts"); Gallo, 22 F.3d at 1224 (defendant wins "by showing that *little or no* evidence may be found" in support of plaintiff's case; i.e., "[w]hen no rational jury could find in favor of [the plaintiff] because the evidence to support [his] case is *so slight*") (emphasis added).

### III.

For all of the foregoing reasons, defendant's motion for summary judgment is granted in entirety and the Third Amended Complaint is dismissed with prejudice. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: Brooklyn, New York
August 23, 2010                                    s/ Judge Raymond J. Dearie
                                                   _____
                                                   RAYMOND J. DEARIE
                                                   United States District Judge